23-661, Vargas-Moya v. A. Duie Pyle, Inc., et al. Thank you. Sorry. Mr. Savistano? Good morning, Your Honor. Gennaro Savistano, on behalf of Plaintiff Appellant Jason Vargas-Moya. May it please the Court. Let me just say, you've reserved two minutes for rebuttal, and I also want to welcome the students from the John Adams High School. We're delighted to have you here in the courtroom today. We hope you enjoy the opportunity to watch Oral Argument in the Second Circuit. Welcome, Mr. Savistano. Thank you, Your Honor. We are respectfully asking this Court to set aside the jury verdict and remand this matter for a new trial, because Plaintiff's Rule 50 motions should have been granted, because on this record, defendant was negligent per se as a matter of law, and there is legally insufficient evidence to support this verdict. So, at bottom, the question for this Court to grapple with today in this case is to answer whether there is legally sufficient evidence to support the jury's finding that defendant did not violate VTL 1128A, which provides that a vehicle shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. We submit that the answer to that is no. Was the driver of the truck ticketed? No, he was not, Your Honor. Okay, so you don't have—so the officers that investigated it didn't charge him with a violation of the Vehicle and Traffic Law? No, Your Honor. Okay. I'm sorry. If I may confirm that with the record, while my adversary— I'm sure you would have known that. I believe I would have known that, Your Honor. Because had he pled guilty to it, of course, that would have been an admission against interest. I'm sure you would have pointed that out to the Court. Right, Your Honor. So what we have here— Your argument kind of boils down—tell me if I'm wrong—boils down to there was an accident, therefore he couldn't have ascertained that he could safely switch lanes. That's a portion of it, Your Honor. The essence of what this will come down to is defendant's testimony that he saw a white car, about four or five car lengths, behind the back of his trailer. Right. And so what this Court has to decide is to what extent are the inferences therefrom reasonable? Well, they're kind of two stories. The truck driver says, I see that there's a left-turn-only lane ahead of me. That's ahead of me. And so I look in my rearview mirrors, and then I look—he has a blind spot, a set of blind spot mirrors. He says he looks in those, and he doesn't see any. He's familiar with the route because he drives that route on a fairly regular basis. He turns his turning signal on. He signals his intention to turn. And then he starts to move over to the right-hand side. And then he comes into contact with the left rear corner panel on the passenger side of your client's car, right? That's absolutely correct, Your Honor. Your client's story is that he's at the light and that they start to take off from the light, and the truck just moves over into him. Unfortunately, your client during his deposition said that he was attempting to pass the truck, and he was impeached on that at Appendix 430 to 435 when they brought out his testimony about that. And when you look at the photographs—you know, once upon a time I was a plaintiff's lawyer, a long time ago. This is a trip down memory lane for me. But I was a plaintiff's lawyer. And you see your client's vehicle. Your client's vehicle is way over to the right. Your client's vehicle is way over to the right here in the picture of the camera. And he's actually turned like he's coming around the car to get ahead of him. Couldn't the jury have believed the truck driver, believed that the truck driver looked, ascertained that it was okay to move into the lane, signals his intention. The car behind him is four or five things back. The driver of that car, who's got a passenger—it's a livery car, some kind of taxi, whether it's an Uber or a Lyft or whatever it is— decides, oh, couldn't the jury conclude this, that, oh my God, I don't want to be behind that tractor trailer truck in one lane of traffic. I'm going to get around it. And this is a parking lane. It's open. You can see that it's open. And so he scoots around. And, Lord, sure enough, his testimony at the deposition was, I was attempting to get around it. Could they believe that? Absolutely not. Wait a second. And could they say, well, he didn't violate the vehicle traffic law. He looked. He did everything he could. And that car just tried to get around it quickly. Absolutely not, Your Honor. Here's why. So given—and is it the standard that we give the opposing party every regional literate inference possible? Absolutely it is, Your Honor. And here's why. First, I take exception to your characterization of that as an impeachment. My client testified using a Spanish translator, and it's certainly reasonable that he could have meant pass by going beyond. The front passenger side of the bus hit the rear driver's side of my car. So— At the very back. That's correct, Your Honor. So if there is, if there was some expert reconstructionist that the defendant wanted to proffer to say that's the only way that that could have been true, then that would have been reasonable. But you're saying— But that's not on this record. You're saying that the court erred because it didn't give you judgment as a matter of law based upon the fact that the statute requires you to change lanes safely? Because the only record evidence here from which you can infer all of those, connect all those dots, is to say that that white car is necessarily my client's vehicle, which we don't know for sure. The question, I think, is could the jury conclude that? Is that inference available? Not is it a necessary inference, but is it an available inference? Oh, I understand, and I would submit the answer to that is no, Your Honor. And I think— Why? Well, it has to be— This is your Exhibit 9. This is your exhibit. That's your client's car. What other white car is there? Your Honor— It's your exhibit. The jury sees that and says, yeah, he was overtaking him. The defendant testified that he didn't even know an accident happened until my client stopped the vehicle, got out of the vehicle. He said when he looked back, he didn't see anything. So my client, who it is undisputed, was always before and after the accident— What you're saying is that the jury had to disbelieve the driver, the truck driver. No. I would never argue that this court should take credibility determinations away from the jury. I explicitly disavowed any reliance upon the accident report, police officer Williams' testimony. All of that I could have brought in and said, oh, you know, believe this, I believe—I would never argue that to this court. Can I just go back and finish? Why couldn't the jury believe that the white car he saw four or five lengths back was your client's car? It's too tenuous an inference, given the totality of the record. And that should— Well, what—I mean, your client's car was a white car, right? It was a white car. And that car was a white car? It was. Is there not, setting everything else aside, an inference available that it's the same car? I don't believe that's enough, and here's why. We have a 40,000-pound, 55-foot tractor-trailer that's admittedly nearly or almost at the left lane only, and that my client is always within the right lane. So for him to have complied with 1128A— that the white car that was in the immediate vicinity moments before the accident is the white car driven by your client, you're veering us off—no pun intended—into your arguments about the truck driver's conduct. What I—both of—all three of us now are asking you is, there's a white car. It's right there at the same time, give or take, in the same place, give or take, and you're telling us—you are asking us to find that the jury— it was impossible for a rational jury to find that was your client's car. No, no. I'm sorry, Your Honor. If that's the way it came across, I am not saying that. My argument is that it's too—it's unreasonably inferential to be essentially speculative. It's possible, and I'm asking this court to find that any such inference was not permissive and too speculative, given the totality of the record. Thank you. Thank you, and you do have two minutes for rebuttal. Janaris, am I saying that right? Yes. Good morning, Your Honors. It may please the court. My name is Kristen Janaris Ford, the defendant appellees. Here, the record shows that Mr. Kaczynski took all precautions necessary prior to initiating this lane change. He slowed his vehicle down to about 5 to 10 miles per hour, turned his right directional signal on, and began looking in his right passenger side and blind spot mirrors before he even initiated this merge. He looked in his mirrors and saw that there was a white vehicle, the only vehicle in that lane, a considerable distance away to the tune of 4 to 5 car lengths behind his 40-foot-long trailer. And at that point, he determined that it was safe to make the lane change. It was entirely reasonable for the jury to infer that that white vehicle was, in fact, Mr. Moya's vehicle. It is the only white vehicle in this record. Mr. Kaczynski testified to thoroughly checking all of his passenger side mirrors, including the blind spot mirror, and his testimony to that effect is entirely unrefuted and unequivocal. And based on that testimony, the jury was entitled to make that inference, and the defendants are entitled to that reasonable inference on this appeal. So for those reasons, Your Honor, we respectfully request that this court decline to disturb the jury's unanimous defense verdict and affirm the judgment appealed from. If the court has any other questions, I'll rely on my brief. Thank you, counsel. Thank you. Mr. Shepson. Your Honor, there's one more point I didn't get to make during my initial argument that is in my papers. I think essentially what we're talking about here is a conflation of causation and comparative fault with negligence. My take on this record is that the jury was essentially making a causation finding. If they had reached the second special interrogatory on the verdict sheet and they had found the dancer's causation, I wouldn't be here, we wouldn't have appealed. I think there was a conflation between the liability portion and the second portion. The first special interrogatory should have been taken away from the jury by Judge Gonzalez. So the first question was, was the defendant negligent? The negligence question, yes, Your Honor. Was his negligence a cause of the action or a cause of the action? That would have been the second question, Your Honor. So unless this court has any other questions, I thank you for your time. Thank you, counsel, for both sides. Appreciate your arguments. The matter is taken under advisement.